## WILLIAM EDWARDS *vs.* LUCIAN MARCY.

If a railroad company issues and sells bonds bearing upon their face a certificate, signed by persons describing themselves as trustees, that the same are secured by a first mortgage to them in trust for the bondholders, there is no absolute presumption that a purchaser thereof relies upon such certificate; and, in an action upon a note given by him as a part of the consideration of the purchase, the question should be submitted to the jury to determine whether he accepted the bond, relying to any extent upon such certificate.

CONTRACT upon a promissory note signed by the defendant and payable to the Boston and New York Central Railroad Company or bearer.

At the trial in the superior court, before *Lord*, J., the defendant offered evidence tending to show that the note was given by him to the railroad company in part payment for a bond of $1000 issued by it, which, at the time of its delivery to him, bore upon its face a certificate, as follows: " We hereby certify that this bond is secured by first mortgage made to us, in trust for the benefit of the bondholders. F. Haven, Dav. A. Neal, Edmund F. Cutter, Trustees"; and that said certificate was untrue, inasmuch as the most valuable portion of the railroad was incumbered by a prior mortgage for about $500,000, whereby the bond was rendered worthless, all which was known to the railroad company at the time of the delivery of the bond to him, and to the plaintiff, before he became the bearer of the note.

It further appeared that, before taking the bond, the defendant had signed a written agreement to take a bond of the railroad company, at a price specified, in which agreement there was no stipulation that the bond should be secured in any manner, and that the bond referred to was taken in discharge of that

obligation; but at the time of signing the agreement the de-
fendant was assured, by persons engaged in procuring signa-
tures thereto, that the previous mortgage on the railroad was to
be discharged, and the bonds to be issued to the subscribers
were to be secured by a first mortgage, and that he signed the
agreement relying upon these assurances.

A verdict was returned for the plaintiff, under instructions by
the presiding judge which are stated in the opinion; and the
defendant alleged exceptions.

*G. F. Hoar*, for the defendant. The railroad company deliv-
ered to the defendant a contract bearing a certificate as to a fact
within their own knowledge, which materially affected the value
of the bond, and was placed there for the purpose of enabling
them to induce persons to accept it. Such a statement, though
in form that of the persons signing it, is in fact and in law the
statement of the company, and was adopted and delivered by
them. Being, therefore, a statement by the railroad, in writing,
of the present existence of a material fact, delivered as a part
of the contract, and as an inducement to the defendant to pur-
chase, it amounted to a warranty, and the defendant must be
absolutely presumed to have relied upon it. *Daniels* v. *Hudson
River Ins. Co.* 12 Cush. 425. *Davenport* v. *New England Ins.
Co.* 6 Cush. 340. The absolute presumption is, that a man
relies on all parts of a written contract into which he enters.

*P. C. Bacon*, for the plaintiff.

MERRICK, J. The defendant produced evidence, upon the trial,
tending to show that the note in suit was given to the Boston
and New York Central Railroad Company in part payment for
their bond, which, at the time of its delivery to him, bore upon
its face a certificate that it was secured by a first mortgage,
made to trustees for the benefit of the bondholders. And he
contended that the representation contained in this certificate
constituted, under these circumstances, an express warranty of
the truth of the fact therein stated; and that, upon proof that
this representation was untrue, and that, by reason of a prior
incumbrance upon the property mortgaged, the supposed security
for the payment of the bond was of no value, and the bond

itself was worthless, he would be entitled to set off the damages he had sustained by a breach of the warranty, and which he claimed to be much greater than the balance remaining due on the note, in discharge of his liability upon it.

The certificate does not in terms purport to have been made or signed by any of the agents or officers of the company, or by any persons authorized to act in their behalf. But as it was appended to the bond before its execution was made complete by delivery, and therefore before it became a valid and effectual contract, the obligors must have procured it to be placed there; and, by delivering the bond in that state to the obligee, they adopted the representation contained in the certificate as their own, and thereby subjected themselves to liability, in the same manner and to the same extent, as if it had been made directly by them in their own name.

The plaintiff contended, and offered evidence tending to show, that at the time when the defendant purchased and took the bond and paid for it, partly in money and partly in and by the note in suit, and thus completed the bargain between himself and the railroad company in relation to it, he had no knowledge of the existence of the certificate and placed no reliance upon it, or upon the truth of the fact asserted in it.

The presiding judge, instead of adopting the prayer of the defendant that the jury should be instructed that the certificate, being appended to the bond and delivered with it at the time of its sale and transfer, constituted a warranty of the truth of the affirmation contained in it, did instruct them, in reference to all the evidence in the case, that the defendant could claim no deduction for any damage sustained in consequence of the worthlessness of the alleged security, unless they were satisfied that he was induced to pay his money and give his note, wholly or in part, by a reliance on the truth of the fact stated in the certificate; and that there was no conclusive presumption arising from the appearance of the bond, with the certificate annexed to it, that he did so rely.

It was thus left to the jury to determine whether, at the time of the sale and delivery of the bond to the defendant, the

obligors did expressly warrant that there was no mortgage on the estate conveyed to the signers of the certificate as trustees for the benefit of the bondholders, prior to that made to them ; or, in other words, whether any such warranty constituted a part of the consideration of the note then given by him to the railroad company.

It is well settled, that neither the word warrant, nor any precise form of expression, is necessary to create an express warranty ; but it may, under certain circumstances, result from any affirmation of the quality or condition of personal chattels made by the vendor at the time of the sale. A bare affirmation, not intended by the vendor to have that effect, will not constitute a warranty ; and this for the plain reason, that a warranty, in its nature, is a contract, and no contract or agreement can be made or entered into without the consent and coöperation of two contracting parties. The rule of law upon this subject is clearly and accurately stated, in the case of *Osgood* v. *Lewis*, 2 Har. & Gill, 495, to be, that any affirmation of the quality or condition of the thing sold, made by the seller at the time of the sale, for the purpose of assuring the buyer of the truth of the fact affirmed and inducing him to make the purchase, if so received and relied on by the purchaser, is an express warranty. The same principle, and with the like qualifications, is recognized and asserted in substantially the same terms by Wilde, J., in giving the opinion of the court, in the case of *Henshaw* v. *Robins*, 9 Met. 83. To prove in any particular instance that there was a warranty by the vendor, it is therefore not sufficient to show merely that, at the time of the sale, he affirmed in clear and definite language a fact relative to the essential qualities or condition of the goods or thing sold, but to this there must be superadded proof that he intended thereby to influence the mind of the purchaser and to induce him to buy, and that the latter did buy upon the faith of, and in reliance upon, the affirmation. This is essential to show that there was in fact a contract between the parties upon the subject.

When the contract is in writing, and the affirmation is incorporated into or makes a part of it, the court is to declare its

legal effect; the exposition of it involving a mere question of
law.   Thus when a bill of parcels was given describing the
goods sold as " two cases of indigo," it was held to be a war-
ranty that the goods sold were what they were thus described,
or designated, as being.   *Henshaw* v. *Robins, ubi supra.*   And
so also in *Hastings* v. *Lovering*, 2 Pick. 214, the words in the
bill of parcels being, " sold two thousand gallons prime quality
winter oil," the plaintiff had judgment upon a declaration in
assumpsit upon an alleged warranty that the article sold was
agreed to be such as it was thus represented.   And in a case
where, in the sale note and in the bill of sale, the goods sold
were described as " gunny cloth, invoice weight $2_{100}^{5}$ lbs. aver-
age per yard," the evidence which was offered to show that it
was the understanding among dealers in that article in the place
where the sale was made that that description was a representa-
tion that the actual weight was substantially the same, was
rejected ; and it was determined that the description in the bill
of sale was a warranty only of the average invoice weight of
the cloth by the yard, and not of its actual weight.   *Rice* v.
*Codman*, 1 Allen, 377.   And where a ship was sold as " a
copper-fastened vessel," and the memorandum was subjoined,
" to be taken, as she lies, with all faults," it was held, that
" with all faults " must mean those faults only which it might
have had, consistently with its being the thing described, and
therefore that the description was a warranty that the ship was
copper-fastened.   *Shepherd* v. *Kain*, 5 B. & Ald. 240.

   But in all oral contracts, it is within the province of the jury
to determine, in view of all the circumstances attending the
transaction, whether the necessary ingredients to constitute such
warranty, namely, the intention of the vendor that his affirma-
tion should operate as an inducement to the purchaser to buy,
and the acceptance of, or reliance to some extent upon, it by the
vendee as one of the grounds, motives or reasons for making the
purchase, do actually exist.   *Osgood* v. *Lewis, ubi supra.*   And
this must be equally true in cases where the representation is
in writing, but is not incorporated into, or made a part of, the
contract of sale.   Thus in an action upon an alleged warranty

in the sale of a horse, it appeared that the plaintiff wrote to the defendant, " You will remember that you represented the horse to me as a five-year old," &c., and he replied, " The horse is as I represented it " ; Best, C. J. left it to the jury to determine whether the defendant, at the sale, gave an undertaking to the effect mentioned in the letters. *Salmon* v. *Ward,* 2 C. & P. 211. And it is stated as a general principle that, in all such cases, the criterion by which it is to be determined whether the representation made is a warranty or not, is the understanding of the parties upon the subject. This must necessarily depend upon the proof offered and produced concerning their agreement or understanding, and therefore is a question of fact which falls directly within the province of a jury to decide. 1 Parsons on Con. 463, 464; and see notes *o* and *p*, where numerous authorities upon the subject are referred to.

Applying these principles to the questions of law presented in the bill of exceptions, the conclusion is direct and obvious. The certificate subjoined to the bond constitutes no part of that instrument; and, consequently, the representation contained in it does not in any respect control or modify the obligation of the bond, nor in any manner vary or affect the rights or responsibilities of the parties to it. It is simply an affirmation that the estate mortgaged as security for the ultimate payment of their dues to the bondholders is subject to no prior similar incumbrance. Under certain circumstances, such a representation might have an important, or even a controlling, influence in forming a judgment concerning the real or marketable value of the bonds ; for a knowledge of the fact stated is essential to anything like an accurate estimate of the value of the security, and consequently it may be also of the bonds secured. The affirmation in the certificate appended to the bond sold to the defendant must therefore be considered to have been made in relation to a material fact, which would have been not unlikely in itself to produce an influence upon his judgment and an effect upon this action. But not necessarily so. This is to be determined not alone upon the representation itself, but upon all the circumstances attending the transaction ; and it is in

view of all these that the question, whether there was in fact a warranty, must be determined ; and this must be submitted to and decided by a jury. To the existence of that contract it is essential that the defendant should have received and relied upon the affirmation in assenting to or in consummating the contract concerning the sale and purchase of the bond between himself and the railroad company. If he did not receive, nor rely upon it at all, and was not influenced by, and did not act upon the faith of it, in making the bargain, there was no warranty by the vendors, and their affirmation could not have constituted any part of the consideration for his note to them. And therefore he had no defence to set up against it. The instruction of the presiding judge brought this question directly and distinctly to the consideration of the jury ; for they were advised, that the defendant could not legally claim any deduction for his note on account of any damages sustained by him, unless they were satisfied upon the whole evidence that he was induced to pay his money and give his note, wholly or in part, by a reliance on the truth of the representation made in the certificate. This was correct ; for a reliance by him to some extent upon the affirmation was essential to render it a warranty. The other part of the instruction was legally correct. The fact that the representation was made was only evidence tending to prove a warranty, but was not conclusive or uncontrollable in its character. *Exceptions overruled.*